Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| LORNA MICHELLE MAISONET RIVERA Y OTROS | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito |
|---|---|---|
| Parte Peticionaria | TA2026CE00285 | |
| v. | | Caso Núm. AI2025CV00480 |
| GOBIERNO MUNICIPAL DE AIBONITO Y OTROS | | Sobre: Dolo Contractual; Incumplimiento Contractual; Daños |
| Parte Recurrida | | |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de marzo de 2026.

Comparecen Lorna Michelle Maisonet Rivera y Gabriel Omar Maisonet Rivera (en conjunto, parte demandante o peticionaria), mediante recurso de *certiorari* y solicitan que revoquemos la *Sentencia* emitida el 9 de enero de 2026, enmendada *nunc pro tunc* el 6 febrero de 2026, y notificada a las partes el 9 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Aibonito.[1] Mediante el referido dictamen, el foro primario declaró *ha lugar* la solicitud de desestimación instada por CRSG, LLC (CRSG) y, en consecuencia, desestimó la causa de acción de epígrafe por falta de jurisdicción sobre la materia.

Examinado el recurso y los documentos del expediente judicial, resolvemos denegar la expedición del auto de *certiorari.*

## I.

El 9 de octubre de 2025, la parte demandante incoó una *Demanda* sobre dolo contractual, incumplimiento contractual y daños contra el Gobierno Municipal de Aibonito (Municipio de

---

[1] *Certiorari*, SUMAC-TA del recurso TA2026CE00285, Entrada 1.

Aibonito), Universal Properties Realty Government Service, LLC (Universal), CRSG y Elizabeth López García h/n/c Elizabeth López Realty Group (en conjunto, codemandados).[2]

En esta, esencialmente alegó que suscribió contratos con Universal, ente administrador del Programa de Control de Estorbos Públicos del Municipio de Aibonito, para iniciar la tramitación y adecuada expropiación de ciertas propiedades. Sostuvo que, ante la mora en la entrega de los bienes inmuebles adquiridos mediante los contratos, obtuvo información, a través de una representante del Municipio de Aibonito, respecto a que estos no habían sido declarados estorbos públicos y que habían sido vendidos por error, por lo que se le estaría solicitando a Universal la devolución del dinero pagado. Añadió que, si bien se reunió con los codemandados para recibir las respectivas devoluciones de dinero, les informó y solicitó formalmente compensación por los daños ocasionados por el incumplimiento contractual. Sin embargo, su reclamo no fue atendido. Por lo que, basado en la alegada conducta dolosa, de mala fe y contraria a derecho de los codemandados, al comprometerse a entregar propiedades para las cuales no tenían autorización ni fundamento legal alguno, la parte demandante solicitó al foro primario que se les otorgara una compensación por daños económicos, emocionales y angustias mentales.

Luego de varias incidencias procesales, el 3 de diciembre de 2025, CRSG presentó una *Solicitud de Desestimación [...]*.[3] Mediante la referida moción, sostuvo que la relación contractual entre la parte demandante y Universal estaba regulada por los términos y condiciones incluidos en el *Contrato para la Expropiación y Adquisición de Propiedad bajo el Programa de Estorbos Públicos del*

---

[2] Véase, expediente electrónico del caso AI2025CV00480 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda.*
[3] *Íd.,* Entrada 13, *Solicitud de Desestimación para Compeler al Arbitraje.*

*Municipio de Aibonito*, el cual acordaba, entre otros asuntos, que las partes convenían dirimir todas y cualesquiera controversias surgidas entre ellos, mediante jurisdicción primaria y exclusiva de arbitraje. Sostuvo que, ante la existencia incuestionable de un contrato válido y de una cláusula de arbitraje, la parte demandante estaba obligada a agotar los remedios contractuales antes de acudir al tribunal. Por tal razón, solicitó al foro primario que desestimara con perjuicio el pleito bajo el fundamento de que este carecía de jurisdicción sobre la materia, así como que se compeliera a la parte demandante a agotar el remedio de arbitraje.

En respuesta, la parte demandante presentó una *Moción en Oposición a la Desestimación y al Arbitraje [...]*.[4] En esta, en síntesis, adujo que la acción presentada ante el foro primario tenía como controversia central la validez del negocio jurídico pactado entre las partes por motivo de causa ilícita y el vicio del consentimiento por motivo de dolo contractual, circunstancias que provocaban la nulidad y anulabilidad del contrato respectivamente. Así, arguyó que, por tratarse la controversia del pleito sobre la legalidad del contrato, el acuerdo de arbitraje carecía de eficacia, conforme al Artículo 2.03 de la Ley Núm. 147-2024, *infra*, y, en consecuencia, le correspondía al tribunal dirimir si la referida controversia estaba sujeta al acuerdo de arbitraje. Asimismo, señaló que los contratos en cuestión fueron suscritos con Universal, organización con personalidad jurídica distinta a CRSG, por lo que a quien le correspondía compeler al arbitraje era a dicha parte.

Por su parte, el 9 de diciembre de 2025, el Municipio de Aibonito instó una *Moción de Desestimación* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.[5] En esencia,

---

[4] *Íd.,* Entrada 14, *Solicitando Anotación de Rebeldía y la Descalificación de Abogada.*
[5] *Íd.,* Entrada 15, *Moción de Desestimación.*

adujo que la demanda dejó de exponer una reclamación que justificara la concesión de un remedio en su contra debido a que de las propias alegaciones de esta surgía que contrató los servicios de Universal para la administración del Programa de Control de Estorbos Públicos y que, en virtud de dicho contrato, quedó relevado de responsabilidad por aquellos actos u omisiones en que pudiera incurrir Universal en el curso de sus servicios. Asimismo, planteó que la parte demandante ejerció la opción de solicitar la devolución de las sumas de dinero pagadas a Universal y, según sus propias alegaciones, estas fueron reembolsadas, mucho antes de que expirara el término pactado por las partes para ello. Por lo que, debido a que se cumplió en su totalidad con las disposiciones contractuales, solicitó que se dictara sentencia desestimando la demanda contra todos los codemandados.

En respuesta, el 9 de diciembre de 2025, la parte demandante presentó su *Moción en Oposición a la Desestimación.*[6] Manifestó que, aunque el Municipio de Aibonito le confirió a Universal poderes para administrar el Programa de Control de Estorbos Públicos, éste conservaba injerencia en el mandato pactado, además de que ambas partes se obligaron a cumplir rigurosamente con las leyes y reglamentación aplicables a los servicios a prestarse. Por lo que, habiendo reclamado vicios de la voluntad y dolo contractual, la demanda sí exponía una reclamación que justificara la concesión de un remedio en contra del Municipio de Aibonito. A su vez, reiteró los planteamientos sobre la cláusula de arbitraje esbozados previamente.

Evaluados los escritos presentados por las partes, el 9 de enero de 2026, y notificada el 23 de enero de 2026, el foro primario emitió la *Sentencia* objeto de este recurso.[7] Mediante el referido

---

[6] *Íd.,* Entrada 16, *Moción en Oposición a la Desestimación.*
[7] *Íd.,* Entrada 24, *Sentencia.*

dictamen, el foro de instancia razonó que las alegaciones sobre nulidad del contrato por "causa ilícita" o "dolo" no anulaban automáticamente la cláusula de arbitraje. En ese sentido, articuló que la cláusula de arbitraje era jurídicamente independiente del contrato principal por lo que el tribunal no podía dilucidar los méritos del dolo o el incumplimiento del contrato principal si existía un convenio de arbitraje válido *prima facie*.

Del mismo modo, señaló que, para determinar si la controversia estaba sujeta a arbitraje, nuestro ordenamiento jurídico limitó la intervención a la existencia y validez de dicha cláusula, por lo que la parte demandante debió probar que el dolo fue dirigido específicamente a la inducción de la cláusula de arbitraje en el contrato y no sobre el contrato en general. Asimismo, apuntaló que, aun cuando los contratos originales fueron suscritos con Universal, de los documentos en el expediente surgió que CRSG actuó como sucesora o como entidad relacionada que asumió la gestión de los estorbos públicos en el Municipio de Aibonito. Por todo lo anterior, declaró *ha lugar* la solicitud de desestimación al amparo de la Regla 10.2 (1) de Procedimiento Civil, *supra*, y en consecuencia, desestimó el pleito en su totalidad. Además, compelió a las partes a someter su controversia al proceso de arbitraje.

En desacuerdo, el 4 de febrero de 2026, la parte demandante presentó una *Solicitud de Reconsideración [...]*.[8] Planteó que contrario a la normativa federal sobre el arbitraje, la Ley Núm. 147-2024, *infra*, no estableció que los jueces carecían de discreción para dejar sin efecto una cláusula de arbitraje cuando existía un acuerdo válido. Así sostuvo que, debido a que los contratos en controversia no afectaron directamente o incidieron sustancialmente en el comercio interestatal, a los convenios de arbitraje no les aplicaba la

---

[8] *Íd.,* Entrada 26, *Solicitud de Reconsideración y Moción a tenor con las Disposiciones de la Regla 47 de las de Procedimiento Civil.*

ley federal ni su jurisprudencia interpretativa, por lo cual el foro primario poseía jurisdicción sobre la materia.

Por su parte, el 5 de febrero de 2026, CRSG presentó su *Moción en Oposición a la Moción de Reconsideración*[9], mientras que, el 6 de febrero de 2026, el Municipio de Aibonito instó su *Moción en Oposición a Solicitud de Reconsideración* [...][10].

Así las cosas, el 9 de febrero de 2026, el foro de instancia notificó *Sentencia Enmendada Nunc Pro Tunc* mediante la cual reafirmó los argumentos esbozados en su determinación original. Por otra parte, el 10 de febrero de 2026, notificó una *Determinación a las mociones presentadas* [...][11] en la cual resolvió, *inter alia*, no *ha lugar* a la solicitud de reconsideración instada por la parte demandante. Expuso que su determinación no estuvo basada en la ley federal sino en la Ley Núm. 147-2024, *infra*, y que, conforme a ello, el dolo alegado en la demanda fue uno general sobre el objeto del contrato o en el cumplimiento de las prestaciones y no uno dirigido a la inducción de la cláusula de arbitraje. Así, concluyó que no se rebatió la presunción *prima facie* sobre dicha cláusula.

Insatisfechos aún, el 9 de marzo de 2026, la parte peticionaria acudió ante este foro revisor mediante recurso de *Certiorari* y le imputó al foro primario la comisión de los siguientes errores:

**Primer Error**: Erró el Tribunal de Primera Instancia al desestimar la demanda por alegada falta de jurisdicción sobre la materia, al amparo de la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, y compeler al arbitraje al interpretar erróneamente la Ley Núm. 147-2024 como un mandato de jurisdicción primaria exclusiva, abdicar de su función judicial de determinar si la controversia está sujeta a la cláusula de arbitraje, conforme al Artículo 2.03 de dicha ley, y aplicar incorrectamente la doctrina de separabilidad al requerir que el dolo fuese dirigido específicamente a la cláusula de arbitraje, aun cuando se alegó nulidad absoluta por

---

[9] *Íd.,* Entrada 28, *Moción en Oposición a la Moción de Reconsideración.*
[10] *Íd.,* Entrada 29, *Moción en Oposición a Solicitud de Reconsideración y Moción a tenor con las Disposiciones de la Regla 47 de las de Procedimiento Civil presentada por la parte demandante.*
[11] *Íd.,* Entrada 32, *Determinación a las mociones presentadas a las entradas [26, 27, 28, 29 y 3[0].*

causa ilícita y violación a la ley, la moral y al orden público.

**Segundo Error**: Erró el Tribunal de Primera Instancia al no invalidar las cláusulas de arbitraje de los contratos otorgados por los Peticionarios y la Recurrida Universal Properties Realty Government Services, al sustentarse las alegaciones sobre causa ilícita y el dolo contractual, que producen la nulidad y anulabilidad de los contratos respectivamente.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[12]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[13] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un

---

[12] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[13] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[14], se justifica nuestra intervención. Estos criterios son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[15]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro

---

[14] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).
[15] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[16] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

Mediante el arbitraje, las partes contratantes voluntariamente acuerdan someter y presentar sus controversias ante un tercero neutral que está investido con la facultad de rendir una decisión.[17] Es por ello que el arbitraje es una figura jurídica inherentemente contractual y es solamente exigible cuando las partes así lo hayan pactado.[18]

En este sentido, en Puerto Rico existe una vigorosa política pública a favor del arbitraje. Esta política se recoge en la *Ley de Arbitraje de Puerto Rico*, Ley Núm. 147 de 9 de agosto de 2024[19], y establece que dos o más partes podrán pactar por escrito para someter a arbitraje cualquier controversia que sea objeto de una acción existente entre ellas a la fecha del convenio, o cualquier controversia que pudiese surgir entre las partes suscribientes en el futuro.[20] Ese convenio de arbitraje será válido, exigible e irrevocable, excepto por las causas dispuestas en ley para la nulidad de los contratos.[21]

El Tribunal Supremo ha expresado consistentemente que las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlo. De esta

---

[16] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).
[17] *Hope Tucker v. Money Group, LLC*, 217 DPR ___ (2026), 2026 TSPR 9 (resuelto el 29 de enero de 2026); *Aquino González v. AEELA*, 182 DPR 1, 20 (2011).
[18] *Hope Tucker v. Money Group, LLC*, supra; *HR, Inc. v. Vissepó & Diez Constr.*, 190 DPR 597, 605 (2014).
[19] 32 LPRA sec. 3230 *et seq.*
[20] Art. 1.04 de la Ley Núm. 147-2024, 32 LPRA sec. 3230c.
[21] Art. 2.03 de la Ley Núm. 147-2024, 32 LPRA 3231b.

forma, las partes acuerdan voluntariamente limitar la jurisdicción sobre su persona de los tribunales, para dar paso al proceso de arbitraje. Así, el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso.[22]

Por consiguiente, cuando los contratantes pactan utilizar el arbitraje como método para resolver las controversias, "se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia".[23] Una vez las partes establecen esta obligación mediante cláusula contractual, se establece una presunción de arbitrabilidad a su favor.[24] La aludida presunción contempla la intención de que se satisfagan los acuerdos de arbitraje negociados por las partes como cualquier otro contrato.[25] En virtud de ello, los tribunales carecen de discreción y tienen que dar cumplimiento al arbitraje acordado.[26]

Ahora bien, aun cuando en Puerto Rico existe una fuerte política pública a favor del arbitraje, este mecanismo se utilizará solo si las partes lo han pactado así y en la forma como lo hayan pactado.[27] Así, una de las controversias que las partes tienen el derecho a dirimir ante los tribunales es aquella relacionada a la obligación de arbitrar.[28] Es decir, si se cuestiona directamente la validez de un acuerdo arbitral, corresponde a los tribunales dilucidar el asunto.[29] En ese menester judicial, los tribunales deben determinar si existe un convenio de arbitraje; si ese convenio cobija

---

[22] *HR, Inc. v. Vissepó & Diez Constr.*, supra, pág. 606.
[23] *Depto. Educ. v. Díaz Maldonado*, 183 DPR 315, 325 (2011).
[24] *Paine Webber v. Soc. de Gananciales,* 151 DPR 307, 312 (2000); *World Films, Inc. v. Paramount Pict. Corp.,* 125 DPR 352, 361-362 (1990).
[25] *Paine Webber v. Soc. de Gananciales,* supra, pág. 312.
[26] *Mun. de Mayagüez v. Lebrón*, 167 DPR 713, 721 (2006); *Paine Webber v. Soc. de Gananciales, supra*, págs. 311-312; *World Films, Inc. v. Paramount Pict. Corp., supra*, págs. 357-358.
[27] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.*, 208 DPR 263, 282 (2021).
[28] *SLG Méndez-Acevedo v. Nieves Rivera*, 179 DPR 359, 367 (2010).
[29] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC.*, supra, pág. 282.

determinada controversia, y si el convenio alcanza una disputa sobre la duración o expiración del contrato.[30] Esto se debe a que, siendo el arbitraje un asunto contractual, no se puede obligar a una parte a someter a arbitraje una disputa que no ha acordado someter.[31]

Por último, la Ley Núm. 147-2024, *infra*, en su Artículo 2.05[32] dispone lo siguiente:

a. A moción de cualesquiera de las partes de un convenio de arbitraje que alegue la negativa de su contraparte a proceder al arbitraje:
   1. el tribunal ordenará que se proceda con el arbitraje salvo que la parte promovida comparezca a presentar oposición suficiente;
   2. si la contraparte comparece y presenta oposición, una vez escuchadas las partes, el tribunal determinará sobre la existencia de un acuerdo arbitral válido.
b. El tribunal resolverá expeditamente una solicitud que alegue que existe una controversia en cuanto a la validez de un proceso arbitral en curso o por comenzarse. **Si el tribunal entiende que existe un convenio arbitral válido, el tribunal ordenará de inmediato que se proceda con el arbitraje**.
c. En ningún caso el tribunal se negará a ordenar el inicio o continuación de un proceso arbitral basado en su criterio sobre los méritos de la reclamación.
d. Advertido el tribunal ante el cual se ventila una acción civil de que esta deba someterse a resolución en un proceso arbitral, el tribunal deberá suspender de inmediato el trámite judicial y ordenará el arbitraje de conformidad con el pacto arbitral correspondiente, salvo que las circunstancias permitan concluir que las partes han renunciado con sus comportamientos a los términos de dicho pacto.

### III.

Es la contención de la parte peticionaria que el tribunal incidió al desestimar la demanda por falta de jurisdicción sobre la materia al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, y al compeler al arbitraje al interpretar erróneamente la Ley Núm. 147-2024, *supra*, como un mandato de jurisdicción primaria exclusiva y abdicar de su función judicial de determinar si la controversia

---

[30] *Íd.*, pág. 283; *SLG Méndez-Acevedo v. Nieves Rivera*, supra, pág. 368.
[31] *Mun. de Ponce v. Gobernador*, 136 DPR 776, 783 esc. 1 (1994).
[32] 32 LPRA 3231d. (Énfasis nuestro).

estaba sujeta a la cláusula de arbitraje, así como al no invalidar las referidas cláusulas al sustentar las alegaciones que producían la nulidad y anulabilidad de los contratos. *No le asiste razón.*

En este caso, es evidente que no existe controversia sobre el hecho cierto de que los contratos suscritos por las partes, en efecto, contienen cláusulas de arbitraje. En específico, los contratos suscritos por la Sra. Lorna Maisonet Rivera[33] y el Sr. Gabriel Maisonet Rivera[34] disponen expresamente que cualquier controversia derivada del mismo sería resuelta mediante arbitraje, siendo esa la jurisdicción primaria y exclusiva sobre las controversias que pudiesen existir. Así, resulta claro que, el foro primario no poseía jurisdicción sobre la controversia de autos. Los señalamientos sobre la nulidad y anulabilidad del contrato no invalidan automáticamente las disposiciones allí contenidas, por lo que la cláusula de arbitraje se presume válida y las alegaciones sobre causa ilícita y dolo contractual deberán ser resueltas por el foro pactado en el contrato.

Siendo ello así, nos resulta claro que la controversia planteada por la parte peticionaria debió ser dilucidada como fue acordado en el contrato, esto es, mediante el proceso de arbitraje, Por ello, determinamos que la actuación del foro primario no fue arbitraria, irrazonable, ilegal o contraria a derecho. Por el contrario, el foro primario actuó correctamente al concluir que carecía de jurisdicción para atender la controversia levantada en la *Demanda* y desestimar la misma. Ello pues el contrato suscrito por las partes estableció la selección de un proceso y foro particular para la resolución de cualquier disputa que surgiera entre estas. En consecuencia, el foro de instancia actuó correctamente al declinar ejercer su jurisdicción

---

[33] Véase, expediente electrónico del caso AI2025CV00480 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada 1, *Demanda*, Anejo Contrato Lorna Maisonet.

[34] *Íd.*, Anejo Contrato Gabriel Maisonet-Universal.

sobre la controversia y compeler a las partes al proceso de arbitraje conforme a lo pactado.

Por consiguiente, luego de analizar la totalidad de las circunstancias del caso, colegimos que no concurre ninguno de los criterios que mueva nuestra discreción para expedir el auto de *certiorari* solicitado y, en consecuencia, nos abstenemos de intervenir con la *Sentencia* recurrida. Lo anterior, por no encontrar indicio alguno de que el foro primario actuó de forma arbitraria, caprichosa, en abuso de su discreción o que haya cometido algún error de derecho.

**IV.**

En virtud de lo anterior, denegamos la expedición del auto de *certiorari.*

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones